COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


MONICA D. BURRELL

                                                              OPINION BY
v.        Record No. 0708-06-1                    JUDGE ROBERT P. FRANK
                                                              JUNE 19, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                               Westbrook J. Parker, Judge

            S. Jane Chittom, Appellate Defender (Virginia Indigent Defense
            Commission, on brief), for appellant.

            Richard B. Smith, Special Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Monica D. Burrell, appellant, was convicted, in a bench trial, of making a false application

for welfare, in violation of Code § 63.2-502, and welfare fraud, in violation of Code § 63.2-522.  On

appeal, appellant challenges her convictions on the grounds that (1) the false statement was not

material to appellant's eligibility for welfare; (2) the evidence was insufficient to prove that the

statement was false; and (3) the evidence was insufficient to prove that appellant made the statement

with the intent to defraud.  For the reasons stated, we affirm the convictions.

                                        BACKGROUND

        On June 29, 2004, appellant went to the Isle of Wight Department of Social Services (DSS)

office to request aid in the form of food stamps for herself and her five children.  Angel Harrell,[1]

appellant's eligibility worker at DSS, met with appellant to have her complete the necessary

paperwork.  Appellant completed a "food stamp application," entitled "Statement of Facts," with the

_____
        [1] The parties stipulated to the evidence from this witness in lieu of her testimony.

assistance of Harrell. This application required appellant to furnish various information, such as her name, home address, phone number, date of birth, social security number, citizenship status, income sources, monthly expenses, and the relevant information for each of her five children, ranging in age from 5 to 13. On this application, appellant listed her address as 91 Pagan Avenue, Smithfield, Virginia. This address was the home of appellant's mother, with whom she claimed she and her children were living.

The application contained a list of "responsibilities" for the applicant, which included the following provisions:

> You must not . . . Give false information or hide information to get food stamps.

> \* \* \* \* \* \* \*

> Anyone who intentionally breaks any of these rules could be . . . prosecuted under other Federal and State laws.

> \* \* \* \* \* \* \*

> BY MY SIGNATURE BELOW, I DECLARE UNDER PENALTY OF PERJURY, ALL OF THE FOLLOWING TO BE TRUE.

> \* \* \* \* \* \* \*

> All information contained in this Statement of Facts and given during my interview is correct and complete to the best of my knowledge and belief . . . .

The application further provided that appellant understood that if she gave "false, incorrect or incomplete information," or if she did not "report required changes on time," that she "may be breaking the law and could be prosecuted for perjury, larceny or welfare fraud." Appellant signed the application.

Because appellant reported living with her mother, Harrell requested that appellant's mother complete a "residency verification" form. This form is key to determining eligibility for food stamps, as Virginia law requires applicants for food stamps to apply in the locality in which

they live.  On the form, it indicated that appellant began residing with her mother on June 12, 2004, and that she paid $250 per month in rent.  Appellant's mother completed and dated the form, but appellant signed her mother's signature, with her mother's permission.  Based on the information provided by appellant, appellant received a total of $3,010 in food stamps from DSS between July 2004 and December 2004.

On June 22, 2004, appellant had completed an application at a home furniture store to lease furniture for a period of three months.  On that application, appellant indicated that her address was 5304 Fairfax Avenue, Newport News, Virginia, and that she had been residing there for three weeks.[2]  Appellant noted that the telephone and utilities for 5304 Fairfax Avenue were in her name.  Appellant listed her previous address as "34 Jamestown Avenue" and indicated that she had lived there for six years.

On August 2, 2004, Barbara Edwards, a DSS public housing eligibility worker for appellant's mother, conducted an on-site inspection of 91 Pagan Avenue and saw no evidence of small children residing in the home.[3]  From June 2004 to December 1, 2004, the only residents listed on the public housing occupancy form for 91 Pagan Avenue were appellant's mother and her son.[4]

The property manager for an apartment complex in Newport News, where 5304 Fairfax Avenue is located, testified that she had seen appellant there on more than one occasion. Appellant's name was not on the lease for the apartment.

A school bus driver for Isle of Wight Public Schools testified that she picked up appellant's son at 91 Pagan Avenue in Smithfield.  On a few occasions, the bus driver saw

---

[2] This evidence was also entered by stipulation of the parties.

[3] The parties stipulated to the evidence from this witness in lieu of her testimony.

[4] At some time in December 2004, appellant's mother added appellant and her five children to her public housing occupancy form.

appellant arrive at the home in a green van. Other children with their backpacks would exit the van and enter the house, while one of appellant's sons would get on the bus. In the afternoons, appellant, a man, and the other children would be waiting in a van parked outside of 91 Pagan Avenue. After appellant's son got off of the bus and entered the van, the van would leave.

The director of student services for Isle of Wight Public Schools initiated an investigation of appellant to determine whether appellant and her children resided in Isle of Wight County. The director met with appellant on November 29, 2004. Appellant admitted that she and her children lived in Newport News at 5304 Fairfax Avenue.[5] The director told appellant that she would either have to pay tuition for her children to attend Isle of Wight schools, or she would have to withdraw them from school. Appellant withdrew her children from Isle of Wight schools on November 29, 2004.

Don Hill, a fraud investigator for DSS, conducted a series of surveillances at two addresses, 5304 Fairfax Avenue in Newport News and 91 Pagan Avenue in Smithfield. These surveillances occurred between October 28, 2004, and November 24, 2004.

On October 28, 2004, a weekday, Hill observed appellant's van parked outside of 5304 Fairfax Avenue at 5:30 a.m. At approximately 6:10 a.m., a man exited the home, got into the driver's seat of the van, and started the vehicle. Five minutes later, five children came out of the house, with the four school-age children carrying bookbags. They entered the van. At 6:30 a.m., appellant exited the house and got into the passenger side of the van. Hill then followed the van as it drove to 91 Pagan Avenue in Smithfield. Appellant and three of the children went inside the home. Hill saw the two other children board a school bus at another address in Smithfield. Hill observed this same routine on November 10, November 15, November 23, and November 24.

---

[5] At an earlier meeting with the director in November, appellant gave her address as "45 Carver Avenue" in Isle of Wight County.

Hill also conducted what he referred to as "drive-by" surveillances of 5304 Fairfax Avenue and 91 Pagan Avenue during that same time period. On five separate evenings, Hill drove first to 91 Pagan Avenue and then to 5304 Fairfax Avenue. He arrived at 91 Pagan Avenue anywhere from 5:15 p.m. to 11:00 p.m. In each instance, Hill saw only a dark blue sedan parked outside of 91 Pagan Avenue. Appellant's van was never there. Hill drove to 5304 Fairfax Avenue, arriving anywhere from 6:30 p.m. to 2:00 a.m. Each time, appellant's van was parked outside of 5304 Fairfax Avenue.

The trial court found appellant guilty of making a false application for welfare and welfare fraud.

This appeal follows.

## ANALYSIS

Appellant contends that the evidence was insufficient to convict her of making a false application for welfare and welfare fraud because (1) the false statement was not material to her eligibility for food stamps; (2) the Commonwealth failed to prove that appellant did not live in Isle of Wight County; and (3) the Commonwealth did not prove that appellant made the statement with the intent to defraud.

### Materiality Requirement

### False Application for Welfare

Appellant asserts that, in order to be convicted of making a false application for welfare, the Commonwealth must prove that the statement was false and that it was material to the proceeding or inquiry in which it was made. Appellant equates a violation under Code § 63.2-502 to a "perjury charge" and relies on various perjury cases to establish a "materiality" requirement for this offense.

Code § 63.2-502 provides that:

> Any person who knowingly makes any false application for
> public assistance or who knowingly swears or affirms falsely to

> *any matter or thing required by the provisions of this title* or as to any information required by the Commissioner, incidental to the administration of the provisions of this title, to be sworn to or affirmed, shall be guilty of perjury and, upon conviction therefor, shall be punished in accordance with the provisions of § 18.2-434.

(Emphasis added). Thus, this statute defines a specific form of perjury, namely the false application for welfare, and identifies the elements of that particular offense. Unlike the general perjury statute,[6] the plain language of Code § 63.2-502 does not require that the matter be "material." The statute expressly criminalizes the falsification of "any matter or thing required by the provisions of this title."

Appellant's reliance on the general perjury statute to supply the elements for conviction under Code § 63.2-502 is misplaced. It is a well-established rule of statutory construction that "when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979). Under the rules of statutory construction, Code § 63.2-502 prevails over the general perjury statute. We only need to consider then whether appellant's address was required by the provisions of Title 63.2.

Code § 63.2-400 requires "the governing body of each county and city" to "appropriate sums of money sufficient to provide for the payment of public assistance and to provide social

---

[6] Code § 18.2-434 defines perjury as follows:

> If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . or if any person in any written declaration, certificate, verification, or statement under penalty of perjury pursuant to § 8.01-4.3 willfully subscribes as true any material matter which he does not believe is true, he is guilty of perjury, punishable as a Class 5 felony.

It is clear that the reference in Code § 63.2-502 to Code § 18.2-434 is only for purposes of prescribing punishment.

services . . . within such county or city." Code § 63.2-501 mandates that an "application for public assistance shall be made to the local board and filed with the local director of the county or city in which the applicant resides." These two statutes make clear that public assistance is administered by each county and city, and funds are distributed out of the funds appropriated by the county or city in which the applicant resides.

Thus, an applicant would be required to furnish an address in order to determine which locality was obligated to provide the applicant with public assistance. Because appellant's address was required on the application and required by Title 63.2, this statement falls squarely under Code § 63.2-502 and satisfies that element for a conviction.

Welfare Fraud

Appellant contends that a false statement as to her residence does not affect her eligibility for food stamps, as it does not go to her financial status. Appellant maintains that she was "entitled" to food stamps based on her financial situation and that this "entitlement" does not change because her application was processed in the wrong locality. Thus, appellant urges that she cannot be convicted of welfare fraud based on a false statement about her residence.

Code § 63.2-522 provides, in relevant part, "Whoever obtains, or attempts to obtain, . . . by means of a willful false statement or representation . . . public assistance . . . to which he is not entitled . . . is guilty of larceny." The Commonwealth must establish that appellant knowingly made a false statement or representation in seeking to obtain public assistance and that, as a result, appellant received public assistance to which she was not entitled.

Appellant limits her definition of "entitled" in Code § 63.2-522 to being financially qualified for public assistance. However, "[w]e give the words of a statute 'their common, ordinary and accepted meaning,' absent an indication by the legislature to the contrary."

Saunders v. Commonwealth, 48 Va. App. 196, 201, 629 S.E.2d 701, 703 (2006) (quoting Gen. Trading Corp. v. Motor Vehicle Dealer Bd., 28 Va. App. 264, 268, 503 S.E.2d 809, 811 (1998)).

"Entitled" is defined as "to furnish with a right or claim to something." American Heritage Dictionary of the English Language 457 (2nd College ed. 1985). As noted above, appellant does not have "right" or "claim" to public assistance from any locality in which she chooses; instead, Code § 63.2-501 entitles her to public assistance, if financially qualified, only in the locality in which she resides. Each locality appropriates funds for public assistance and for the administrative costs of providing such assistance, for which they are later reimbursed in whole or in part by the Commonwealth. Code §§ 63.2-400 and 63.2-401.

Appellant was not "entitled" to food stamps from Isle of Wight County; the fact that she may have been entitled to food stamps in a different locality is immaterial to the present offense. The Commonwealth proved that appellant received $3,010 in assistance from Isle of Wight County. Thus, a false statement as to appellant's residence, which indicated that she lived in Isle of Wight County when her actual residence was outside of that locality, is sufficient to convict appellant of welfare fraud.

Appellant's Residence

Appellant argues that the evidence was insufficient to show that she did not reside in Isle of Wight County. Appellant maintains that the evidence showed only that she "spent some nights at an address in Newport News," but that her "legal residence" remained at her mother's home in Smithfield.[7]

---

[7] Appellant did not argue before the trial court that she maintained a legal residence at her mother's address in Smithfield, or that Title 63.2, in requiring applicants for public assistance to furnish their home address, refers to "legal residence." Thus, we will not address these arguments on appeal. See Rule 5A:18. Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). We will not consider such an argument *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

- 8 -

As noted in the discussion above, Title 63.2 requires applicants for public assistance to apply in the locality "in which the applicant resides." Code § 63.2-501. We must first determine the meaning of "reside" as used in that statute.

"'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1933)). The Virginia Supreme Court has long held that "when analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Va. Beach v. ESG Enters., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr, 240 Va. at 295, 396 S.E.2d at 674).

Thus, we give the term "reside" its plain and ordinary meaning, which is defined as "the act of abiding or dwelling in a place for some continuance of time." Long v. Ryan, 71 Va. (30 Gratt.) 718, 720 (1878). We now consider whether the evidence was sufficient to prove that appellant did not reside at 91 Pagan Avenue.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (emphasis in original) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 662-63, 588 S.E.2d 384, 386-87 (2003)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth,

41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

On November 29, 2004, appellant admitted to the director of student services for Isle of Wight Public Schools that she "lived" in Newport News, at the same address she listed as her residence on the application to lease furniture five months earlier.[8] On that application, appellant indicated that she paid the telephone and utilities in Newport News. On five separate occasions, appellant and her children were seen leaving Newport News in the early morning hours and driving to bus stops located in Smithfield. The bus driver for one of appellant's children saw appellant and the children leave in appellant's van after the child exited the school bus.

On five different evenings, appellant's van was parked outside of the Newport News address, as early as 6:30 p.m. and as late as 2:00 a.m. Appellant's van was never seen parked outside of her mother's home on those evenings. A social worker visiting the home of appellant's mother did not see evidence of small children living there, and appellant's mother did not list appellant or her children as residing with her on her public housing occupancy form until sometime in December 2004. Further, there was no evidence before the trial court that appellant lived, for any

---

[8] Appellant contends that, because the furniture lease is dated June 22, 2004, one week before the period covered by the indictment, the trial court could not consider this evidence against appellant. However, as this argument was not made before the trial court, we will not consider it on appeal. See Rule 5A:18. Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See Redman, 25 Va. App. at 221, 487 S.E.2d at 272. We will not consider such an argument *sua sponte*. Edwards, 41 Va. App. at 761, 589 S.E.2d at 448.

length of time, at 91 Pagan Avenue.  Thus, it was reasonable for the trial court to conclude that appellant did not reside at 91 Pagan Avenue.

Intent to Defraud[9]

Appellant contends that there is no evidence that she possessed the intent to defraud or mislead when she listed her mother's address as her home address.  Appellant maintains that she believed her mother's address to be her "legal residence," though she may have been staying in Newport News.  Further, appellant argues that, because she was financially entitled to public assistance, she did not intend "to defraud anyone of the cost of food stamps."

"Intent to defraud" has been defined by this Court as acting "with an evil intent, or with the specific intent to deceive or trick."  Campbell v. Commonwealth, 14 Va. App. 988, 990, 421 S.E.2d 652, 653 (1992) (*en banc*), aff'd in part, 246 Va. 174, 431 S.E.2d 648 (1993).  Intent "may, and often must, be inferred from the facts and circumstances in a particular case."  Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).  We must "'look to the conduct and representations of the defendant.'"  Rader v. Commonwealth, 15 Va. App. 325, 329, 423 S.E.2d 207, 210 (1992) (quoting Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986)).

The evidence belies appellant's argument.  Harrell reviewed the public assistance application with appellant and helped her in filling in the required information.  Harrell did not note any difficulty or confusion that appellant had in understanding what address she was to furnish.  The application contained warnings about the penalties that could result from the provision of *any* false information.  Further, appellant gave the director of student services for Isle of Wight Public

---

[9] At oral argument, the Commonwealth contended that Code § 63.2-522 does not require the Commonwealth to prove intent to defraud as an element of the offense.  However, the Supreme Court of Virginia has expressly held that fraudulent intent is a "material element" of the crime of welfare fraud.  Brooks v. Commonwealth, 220 Va. 405, 407, 258 S.E.2d 504, 506 (1979) (*per curiam*) (decided under the former statute for welfare fraud, Code § 63.1-124).

Schools several different addresses, including 45 Carver Avenue, 91 Pagan Avenue, and 5304 Fairfax Avenue. Appellant admitted "living" in Newport News, and withdrew her children from Isle of Wight Public Schools when confronted with the allegations that she actually resided in Newport News. Appellant's admission was consistent with the address she listed on the application to lease furniture, and on that application appellant claimed to pay for the utilities and telephone at the Newport News address. Just one week later, appellant provided DSS with an address in Isle of Wight County and applied for food stamps in that locality, instead of the locality in which she lived.

From appellant's conduct and statements, the trial court could reasonably conclude that, while appellant may not have had the intent to defraud DSS as to her financial eligibility for food stamps, she did have the intent to defraud DSS as to her right to claim those food stamps in Isle of Wight County. That intent is sufficient to support convictions for making a false application for welfare and welfare fraud.

### CONCLUSION

Code §§ 63.2-502 and 63.2-522 criminalize the use of a false address when applying for and receiving public assistance from a particular locality, when that address was provided with the intent to defraud. We find that the evidence was sufficient to show that appellant did not reside at 91 Pagan Avenue, that appellant knew that she was supplying DSS with a false address when she completed her application for public assistance in Isle of Wight County, and that, as a result of this false statement, appellant defrauded Isle of Wight County of $3,010 in public assistance. Thus, we affirm appellant's convictions for making a false application for welfare and welfare fraud.

Affirmed.